# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. James B. Clark, III |
| v. | : Mag. No. 19-3104 |
| RAYMOND SCURA | : **CRIMINAL COMPLAINT** |

I, Thomas R. Regina, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Thomas R. Regina, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed in my presence,   ESSEX COUNTY, NEW JERSEY
This 13th day of March 2019               County and State

HONORABLE JAMES B. CLARK, III
UNITED STATES MAGISTRATE JUDGE           Signature of Judicial Officer

## ATTACHMENT A

### COUNT ONE
### (Wire Fraud)

From at least as early as in or around July 2016, through on or about October 11, 2016, in the District of New Jersey and elsewhere, the defendant,

### RAYMOND SCURA,

did knowingly and intentionally devise a scheme and artifice to defraud Merchant 1, and to obtain money and property, namely membership and credit at Merchant 1, by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, which violation affected a financial institution.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO
### (Aggravated Identity Theft)

On or about October 11, 2016, in the District of New Jersey, and elsewhere, the defendant,

**RAYMOND SCURA,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another individual, namely a credit card account of Victim 1, during and in relation to a felony violation of a provision contained in Chapter 63 of the United States Code, that is, wire fraud in violation of Title 18, United States Code, Section 1343, as charged in Count One of this Criminal Complaint.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## ATTACHMENT B

I, Thomas R. Regina, a Special Agent with the Federal Bureau of Investigation, having conducted an investigation and having discussed this matter with other law enforcement officers who have participated in this investigation, have knowledge of the following facts. Because this Criminal Complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause. Unless specifically indicated, all dates described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

### Relevant Individuals and Background Information

1. At all times relevant to this Criminal Complaint:

    a. Defendant RAYMOND SCURA ("SCURA") was a resident of New Jersey.

    b. Chase Bank ("Chase"), Citibank, N.A. ("Citibank"), Republic Bank ("Republic"), and TD Bank were federally regulated national banking associations, the accounts of which were insured by the FDIC, making them "financial institutions" as that term is defined in Title 18, United States Code, Section 20.

    c. "Victim 1" resided in California, was a customer of Citibank, and held a credit card account ending in account number 4005.

    d. "Victim 2" resided in New York, was a customer of Chase, and held a checking account at Chase.

    e. "Victim 3" resided in New Jersey, was a customer of Chase and TD Bank, and held a credit card account at Chase.

    f. "Merchant 1," was a country club located in New Jersey.

    g. "Merchant 2" was a retail vendor located in New Jersey.

    h. "Merchant 3" was a limousine service located in New Jersey.

    i. "Merchant 4" was a retail vendor located in New Jersey.

**Overview of Defendant's Fraudulent Scheme**

2.      From at least as early as in and around July 2016 to the present, defendant SCURA defrauded various individuals and entities, including a country club, retail vendors, and financial institutions, employing at least one of three means.  In some circumstances, defendant SCURA obtained goods and services from his victims by charging such items to credit card accounts that were not his own and which he did not have authorization to access or use.  Defendant SCURA also wrote and presented personal checks both in his own name and in the name of unwitting victims from accounts defendant SCURA knew were either closed or held insufficient funds to cover the checks.  One some occasions, defendant SCURA used one or more of the means described above in order to dupe his victims.  In every case, defendant SCURA obtained and attempted to obtain merchandise, services, and cash from his victims, and in so doing, accessed credit or wrote checks from accounts with Chase, Citibank, Republic, and TD Bank, causing losses and intended losses of at least approximately $700,000.

**Conduct Charged in Count One**

3.      In one version of defendant SCURA's scheme to defraud, he obtained money and property from a merchant victim by using the credit card account of an unwitting bank account holder who neither had knowledge that defendant SCURA was using his or her credit card account nor provided defendant authorization to do so.

4.      In or around July 2016, defendant SCURA and a third party walked into Merchant 1 and completed an application for membership.  Merchant 1 charged a $7,500 registration fee to join the club, as well as an annual fee of $8,000.  Any new member was required to make an initial deposit of $4,500.  Once a new member was enrolled, the member could then charge goods and services to his or her member account.

5.      Upon completing the enrollment process, defendant SCURA began making numerous purchases on his newly created member account.  In total, between on or about July 31, 2016, and on or about September 30, 2016, defendant SCURA accrued debts owing to Merchant 1 in the total amount of approximately $18,783.37.

6.      On or about October 11, 2016, defendant SCURA used a credit card account ending in 4005 issued by Citibank to pay the $18,783.37 owed to Merchant 1.  The actual accountholder of account number 4005, Victim 1, was an individual residing in California.  Victim 1 did not authorize defendant SCURA to use the account.

7.      The credit card transaction initially was accepted but was subsequently declined and charged back to Merchant 1.

8. The credit card transaction discussed above in paragraph 6 necessitated an interstate wire communication in order to be processed by Merchant 1. Specifically, Merchant 1 had a merchant account with a third-party credit card processing vendor that maintained servers located outside of New Jersey. When defendant SCURA presented Victim 1's credit card information to Merchant 1 in New Jersey, Merchant 1 transmitted the relevant information from the point-of-sale terminal at Merchant 1, via wire, to the processing vendor's computer servers in Omaha, Nebraska.

9. Once the credit card transaction was processed, the processing vendor then transmitted the authorization, again via wire, from the processing vendor's computer servers in Omaha, Nebraska, back to Merchant 1 in New Jersey.

**Other Transactions Comprising Defendant's Scheme to Defraud**

*Additional Transactions with Merchant 1*

10. Defendant also defrauded Merchant 1 by fraudulently using personal checks. Defendant SCURA obtained money and property from Merchant 1 by writing checks from his own accounts or from the accounts of unwitting third parties who did not authorize defendant SCURA to access or use their checks. Moreover, the accounts were often closed, nonexistent, or contained insufficient funds to support the purchase, meaning defendant SCURA's merchant victims were left unpaid in return for their goods and services.

11. For example, on or about July 26, 2016, August 4, 2016, and August 12, 2016, defendant SCURA presented three personal checks in the amounts of approximately $1,000, $3,500, and $4,500, respectively, to Merchant 1 to purchase certain goods and services. All three checks were in the name of a third party with an account at Chase. At the time that defendant SCURA presented these checks to Merchant 1, he knew that the bank account on which they were written contained insufficient funds to purchase the goods and services. Indeed, when Merchant 1 attempted to deposit the checks, Merchant 1 learned that the account underlying the checks used by defendant SCURA did not contain sufficient funds to support the purchases. As a result, defendant SCURA obtained the goods and services from Merchant 1 without Merchant 1 receiving any money in return.

*Transactions with Merchant 2*

12. Similarly, on or about December 24, 2016, defendant SCURA entered Merchant 2's retail location in Marlton, New Jersey. Defendant SCURA gathered several high-value items, including approximately 12 bottles of wine, totaling approximately $2,863.04 in merchandise.

13. Having collected the merchandise, defendant SCURA presented a personal check in the amount of approximately $2,863.04. The check was in his own name with an account at Republic. At the time he presented this check to Merchant 2, however, defendant SCURA knew that the account had been closed and therefore held no funds.

14. The cashier at Merchant 2 completed the transaction at the time of the sale; however, Merchant 2 was never paid for the merchandise because subsequent processing by Merchant 2 revealed that the check used by defendant SCURA during this transaction was not associated with an open account that had sufficient funds to cover the purchase.

*Transactions with Merchant 3*

15. In or around November 2017, defendant SCURA booked Merchant 3's car service, located in Kenilworth, New Jersey, to drive him around on several occasions. Defendant SCURA paid Merchant 3 by credit card in the amounts of approximately $450 for the first service and approximately $350 for the second service, respectively. The credit card transactions were subsequently declined.

16. Defendant SCURA continued to use but not pay for Merchant 3's limousine services, and by late November 2017, defendant SCURA owed Merchant 3 approximately $3,000. On or about November 25, 2017, defendant SCURA provided Merchant 3 with a personal check from a Chase checking account. In addition, the actual owner of the account, Victim 2, was an individual residing in New York, and had not given defendant SCURA authorization to use or issue checks from the account and had in fact, through legal proxy, previously closed the account due to fraud.

17. Subsequent processing of the check by Merchant 3 revealed that the check used by defendant SCURA to pay for Merchant 3's services was written on an account that had insufficient funds to pay for the car services.

*Transactions Involving Victim 3*

18. In or around October 2018, unbeknownst to Victim 3, defendant SCURA stole the information associated with Victim 3's Chase credit card account and began making purchases from the account without Victim 3's authorization.

19. For example, from on or about October 7, 2018, through on or about October 12, 2018, defendant SCURA and Victim 3 stayed at a hotel in New York, New York, on at least approximately two separate occasions. Defendant SCURA purported to personally pay for all costs incurred and services received during the hotel stays but used Victim 3's Chase credit card without Victim 3's authorization to do so. In total, defendant SCURA fraudulently charged approximately $31,668 to Victim 3's credit card account.

*Transactions with Merchant 4*

20. On or about January 9, 2019, defendant SCURA contacted the manager of Merchant 4, located in Marlton, New Jersey. Defendant SCURA stated that he was interested in purchasing a Rolex watch. The manager and defendant SCURA negotiated a price of approximately $52,000 for a Rolex watch in Merchant 4's inventory and agreed to meet later that day.

21. Defendant SCURA subsequently met the manager of Merchant 4 and, in return for the Rolex watch, presented a personal check in the amount of approximately $52,246 in his name from TD Bank to the manager, knowing that the account did not exist and therefore held no assets.

22. On or about January 10, 2019, defendant SCURA again contacted the manager of Merchant 4 to purchase two more watches. The manager went to a local TD Bank branch to inquire whether the check used by defendant SCURA to purchase the Rolex watch was valid and learned that the account from which the check was written did not exist and that the check was therefore fraudulent.

23. Defendant SCURA continued to contact the manager in an attempt to obtain additional watches. The manager reported defendant SCURA's fraud to the police and agreed to meet defendant SCURA in Atlantic City, New Jersey, under the guise of providing him with the requested watches. Defendant SCURA was subsequently arrested.